FILED
CLERK
10:39 am, Jan 08, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ATLANTIC CASUALTY INSURANCE
COMPANY,

      Plaintiff,

      -v-

DTM CARPENTRY CORP.,
LINDA MOORE,
WILMER E. VILLALBA,
JOHN ("JACK") R. BRADY,
JACK R. BRADY
d/b/a JACK BRADY-CUSTOM BUILDER,
DM CARPENTRY CORP.,
DARREN MOORE, and
RAYMOND J. RIEDER,

      Defendants.
--------------------------------------------------------X

Case No. 18-cv-3508 (SFJ)(ARL)
**Memorandum and Order**

FEUERSTEIN, S., Sr. District Judge:

I.    Introduction

    Plaintiff Atlantic Casualty Insurance Company ("Plaintiff", "Atlantic Casualty" or "ACIC") commenced this declaratory judgment against Defendants DTM Carpentry Corp. ("DTM"), Linda Moore ("Linda"), Wilmer E. Villalba ("Villalba"), John ("Jack") R. Brady ("Brady"), Jack R. Brady d/b/a Jack Brady-Custom Builder ("Builder"; together with Brady, the "Brady Defendants"), DM Carpentry Corp. ("DM"), Darren Moore ("Darren"), and Raymond J. Rieder ("Rieder"), seeking declaratory judgment that it does not owe coverage, or a duty to defend or indemnify, DTM or any other person or entity under the Atlantic Casualty Policy No. L068018773 or any other policy issued on behalf of Atlantic Casualty, for any claim arising out of Villalba's February 26, 2016 accident. (*See generally* Amended Complaint[1] (ECF No. 4).)

---

[1] The Amended Complaint was filed the same day as Plaintiff's original Complaint. (*Cf.* Complaint (ECF No. 1), *with* Amended Complaint (ECF No. 4).)

1

Presently before the Court is Plaintiff's motion seeking summary judgment on its Amended Complaint (hereafter, the "Summary Judgment Motion") (*see* ECF No. 43; *see also* Mem. in Supp. ("Support Memo") (ECF No. 43-15)), which the Brady Defendants and Villalba oppose (*see* ECF No. 44-4 (hereafter, "Brady Opposition" or "B-Opp'n"); ECF No. 45-4 (hereafter, "Villalba Opposition" or "V-Opp'n")). For the following reasons, Plaintiff' Summary Judgment Motion is GRANTED.

II.  Background

    *A. Factual Background*[2]

        1. <u>The Insurance Policy</u>

DTM was the "Named Insured" under a commercial general liability insurance policy issued on behalf of ACIC, Policy No. L068018773 (hereafter, the "Policy"), which was effective from October 30, 2015 to October 20, 2016. (Rule 56.1 Stmt., ¶1.) Among other things, the Policy contained endorsement AGL-055A (dated "3/13/), entitled: "Exclusion of Injury to Employees, Contractors and Employees of Contractors" (hereafter, the "Exclusion"), which stated:

> **EXCLUSION OF INJURY TO EMPLOYEES,
> CONTRACTORS AND EMPLOYEES OF CONTRACTORS**
>
> Exclusion **e. Employer's Liability** of **SECTION I –
> COVERAGE A - BODILY INJURY AND PROPERTY
> DAMAGE LIABILITY** is replaced by the following:
>
> This insurance does not apply to:

---

[2] Unless otherwise indicated, the facts are taken from the Plaintiff's Rule 56. 1 Statement in support of its Summary Judgment Motion (hereafter, "Rule 56.1 Stmt.")(*see* ECF No. 43-14), the Brady Defendants' Rule 56.1 Counter-Statement (hereafter, "B-Rule 56.1 Counter")(*see* ECF No. 44-3), and Villalba's Rule 56.1 Counter-Statement (hereafter, "V-Rule 56.1 Counter")(*see* ECF No. 45-23). Further, unless otherwise stated, a standalone citation to a Rule 56.1 Statement or Counter-Statement denotes that either the parties agree, or the Court has determined, that the underlying factual allegation(s) is(are) undisputed. Citation to a party's Rule 56.1 Statement or Counter-Statement incorporates by reference the document(s) cited therein.

(i) "bodily injury" to any "employee" of any insured arising out of or in the course of:

    (a) Employment by any insured; or

    (b) Performing duties related to the conduct of any insured's business;

(ii) "bodily injury" to any "contractor" for which any insured may become liable in any capacity; or

(iii) "bodily injury" sustained by any spouse, child, parent, brother or sister of any "employee" of any insured, or of a "contractor", as a consequence of any injury to any person as set forth in paragraphs **(i)** and **(ii)** of this endorsement.

This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.

This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

With respect to this endorsement only, the definition of "Employee" in the **SECTION V - DEFINITIONS** is replaced by the following:

"Employee" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

As used in this endorsement, "contractor" shall include, but is not limited to, any independent contractor or subcontractor of any insured, any general contractor, any developer, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

(*Id.* at ¶3 (quoting Exclusion at Bates No. ACIC000051, part of Policy, *attached as* Ex. 1 (ECF No. 43-12) to Coric Aff. (ECF No. 43-11))(emphasis in original).)

### 2. The Project and Accident

"[I]n the course of his work" at 11 Locust Street, Aquebogue, New York 11931 (hereafter, the "Project"), on February 26, 2016, Villalba was purportedly injured after falling approximately 28 to 30 feet "from a scaffold/roof to the ground below" (hereafter, the "Accident"). (*See id.* at ¶¶4-5.) It is disputed whether, "[i]n conjunction with the work performed by . . . Villalba on the Project, on February 20, 2016 (six days prior to the Accident), . . . Villalba executed a Subcontract Agreement with Ms. Linda Moore, identified on the Subcontract Agreement as the President of DTM Carpentry Corp." (*Cf.*, Rule 56.1 Stmt., ¶6, *with* B-Rule 56.1 Counter, ¶6 (disagreeing with ACIC's ¶6, stating the "subcontract has not been properly authenticated by an officer of DTM"), and V-Rule 56.1 Counter, ¶6. (disagreeing with ACIC's ¶6, asserting Villalba "never authenticated the document or its contents" and "the 'Subcontract Agreement' was not provided to [Villalba] until March 8, 2016, which was 10 days *after* the [A]ccident").)

### 3. The State Action

On August 8, 2017, Villalba commenced a state court action against, *inter alia*, DTM seeking to recover damages for the injuries he purportedly sustained in the Accident (hereafter, the "State Action"). (*See id.* at ¶¶7-8.) Among other things, Villalba alleged in his verified complaint:

> 220. That on or about February 26, 2016, *in the course of his work*, [Villalba] fell from a scaffold, falling approximately 28-30 feet to the sandy ground below.
> 221. That on or about February 26, 2016, *in the course of his work*, [Villalba] fell from a roof, falling approximately 28-30 feet to the sandy ground below.

4

> 222. That on or about February 26, 2016, *in the course of his work*, [Villalba] fell while transferring from a scaffold to the roof of a structure, falling approximately 28-30 feet to the sandy ground below.
> * * *
> 227. That at all times mentioned herein, there existed circumstances as such wherein there was a foreseeable need for safety devices for [*Villalba*] *and other workers working on the roof and scaffolding*.
> * * *
> 231. On or about February 26, 2016, while [*Villalba*] *was lawfully working at the* [*Project*], he was caused to sustain serious personal injuries.

(State Action Verified Complaint (ECF No. 43-8), *attached as* Ex. G to Renner Decl. (ECF No. 43-1)(emphasis added).) Plaintiff received notice of the State Action on September 11, 2017 and denied coverage to DTM on September 12, 2017 (*see* Rule 56.1 Stmt., ¶¶9-10) "on the grounds that, *inter alia*, Mr. Vallalba's claims were not covered under the Policy per the [Exclusion]." (*Id.*, ¶10.)

### B. Procedural Background

On June 15, 2018, Plaintiff commenced this action seeking a declaration that it does not owe coverage to DTM, or any other person and/or entity, under the Policy or any other policy issued on behalf of Atlantic Casualty, for any claim arising out of the Accident. (*See id.* at ¶11.) On July 13, 2018, Rieder filed a certified Answer in response to the Amended Complaint, denying ACIC's allegations and causes of action. (*See* ECF No. 7.) On July 31, 2018, Villalba answered the Amended Complaint (*see* ECF No. 8). While he did not deny that, in the State Action, he alleged that "in the course of his work" he was injured on February 26, 2016 in the Accident at the Project (*see id.* at ¶3), Vallalba otherwise denied ACIC's allegations and causes of action. (*See id., in toto*.) On August 9, 2019, the Brady Defendants filed their Answer: denying ACIC's allegations and causes of action; raising several affirmative defenses; and

5

bringing a cross claim for contribution against Defendants DTM, Linda, Villalba, DM, Darren, and Rieder. (*See* ECF No. 9.) On September 11, 2018, DM answered the Amended Complaint (*see* ECF No. 11); it: admitted ACIC's Background allegations regarding Villalba's allegations that "in the course of his work," Villalba was injured in the Accident at the Project (*see id.* at ¶4); otherwise denied ACIC's allegations and causes of actions; raised affirmative defenses (*see id.* at ¶¶29, 30); and raised a counterclaim against ACIC that if ACIC is determined to owe insurance coverage under the Policy, it be obligated to insure DM (*see id.* at ¶31).

Linda, Darren, and DTM did not appear or answer the Amended Complaint (*see* Case Docket, *in toto*), resulting in the Clerk of Court entering defaults against them (*see* ECF No. 17 (re: Linda and Darren); ECF No. 31 (re: DTM)). Thereafter, on January 28, 2019, default judgment was entered against Linda, Darren, and DTM (*see* ECF No. 37), which provided, *inter alia*, that ACIC "has no duty to provide coverage, defense or indemnification to" Linda, Darren and DTM under the Policy or any other policy on behalf of ACIC "for any claim arising out of [the] accident involving Wilmer E. Villalba, which alleged[ly] occurred on or about . . . February 26, 2016, but not limited to, those claims asserted in" the State Action. (*Id.* at 2.)

On April 1, 2019 Plaintiff moved for summary judgment against the remaining Defendants (*see* ECF No. 43), which both the Brady Defendants and Villalba opposed (*see* ECF Nos. 44 & 45, respectively), but to which Rieder did not respond (*see* Case Docket, *in toto*).

 C. *The Parties' Positions*

  1. <u>ACIC's Position</u>

The crux of Plaintiff's argument is that since Villalba's claims are based on bodily injuries he sustained in his work-related Accident, those claims fall squarely under the Exclusion to the Policy. (*See* Support Memo at 1, 4-5.) Hence, the Exclusion "operate[s] to preclude any

coverage in connection with the claims resulting from the Accident." (*Id.* at 5; *see also id.* at 6 (arguing Villalba fits within the clear and unambiguous definition of "employee" as stated in the Exclusion).)

        2. The Brady Defendants' Position

The Brady Defendants contend they are "an interested party" to the instant action since DTM was required to list them under the Policy as "Additional Insured". (B-Opp'n at 1.) They argue that ACIC has not met its burden of proof since "Atlantic's proof that Mr. Villalba was an employee or independent contractor of DTM, which would bring Mr. Villalba under the umbrella of th[e Policy's] Exclusion, is based on a purported subcontract agreement between DTM and . . . Villalba," which "subcontract has not been authenticated." (*Id.* at 1-2; *see also id.* at 4 ("Atlantic is relying on an unauthenticated subcontract agreement . . . , which is insufficient to support [its] burden of proof that there is no material issue of fact to be determined").)

        3. Villalba's Position

Villalba argues that *after* the Accident: he received an email from Darren with two subcontractor agreements attached to it; and, he signed one of the subcontract agreements at Darren's request despite not being able to read or speak English and not understanding the document he signed. (*See* V-Opp'n at 2.) Therefore, ACIC cannot establish that at the time of the Accident, Villalba was one of DTM's employees, *i.e.*, "it has not established the basis of its exclusion – whether . . . Villalba was an employee, subcontractor, independent contractor, or something else of DTM" at the Project. (*Id.* at 3.)

        4. ACIC's Reply

Plaintiff replies that "based on the clear language of the [E]xclusion, it is not necessary to pinpoint who actually hired Villalba, or whether he fits into the commonly used definitions of

7

'subcontractor' or 'independent contractor' (which are inapplicable here as the definitions in the Policy govern) – as long as it is established that he was performing work in connection with the [P]roject. Such a fact has not only been established but is undisputed." (Reply at 2.) Indeed, both the Brady Defendants and Villalba admit that fact in their Counter-Statements. (*See id.* at 4-5; *see also* B-Rule 56.1 Counter, ¶4-5; V-Rule 56.1 Counter, ¶4-5.) Hence, to the extent the parties are trying to create an issue of disputed fact, such effort should be disregarded. (*See id.*; *see also id.* at 4-5 (stating there is no dispute (emphases in original)).)

ACIC further argues that in the State Action, the court ruled that Villalba was not in DM's employ at the time of the Accident, and "[g]iven that fact, the only logical conclusion that this Court can make on the record is that Villalba was working for DTM . . . at the time of the [A]ccident." (*Id.* at 3.) Finally, it contends that even if, as the Brady Defendants argue, Villalba could be considered an employee or contractor of the Brady Defendants, *i.e.*, the purported additional insured, "there still would be no coverage under" the Policy because the Exclusion "excludes coverage for 'bodily injury' to any 'employee' of ***any*** insured arising out of or in the course of employment by ***any*** insured; or performing duties related to the conduct of ***any*** insured's business." (*Id.* (emphases in original).) The same argument is true for any "contractor". (*See id.*)

III. Discussion

    *A. Applicable Law*

        1. The Summary Judgment Standard

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P.

56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).  In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added; internal quotations and citation omitted)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 823 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.").  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact."  *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114.  "[W]hen

9

the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment by "adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)), and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (quoting *Fletcher v. Alex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995))); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (quotations and citations omitted).

2. <u>Interpretation of Insurance Contracts</u>

Under New York law, "the construction of an insurance contract 'is ordinarily a matter of law to be determined by the court.'" *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-cv-6811, 2014 WL 2199428, at *7 (S.D.N.Y. May 23, 2014)(further citation omitted); *see also Int'l Multifoods Corp. v. Comm. Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002) (stating interpretation of a contract "is a matter of law for the court to decide"). Construction of an insurance policy "is governed by the rules of construction applicable to contracts generally," *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.,* 979 F.2d 268, 274 (2d Cir. 1992), and "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract," *see Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.,* 472 F.3d 33, 42 (2d Cir. 2006) (citation and internal quotation marks omitted). "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *White v. Continental Cas. Co.*, 9 N.Y.3d 264, 848 N.Y.S.2d 603, 878 N.E.2d 1019, 1021 (2007). "When an insurer seeks to invoke an exclusionary clause in a contract to disclaim coverage, it has the burden of demonstrating that the exclusion applies 'in clear and unmistakable language,' which is 'subject to no other reasonable interpretation.'" *Atlantic Cas. Ins. Co. v. Torres Custom Framing Corp.*, No. 14-cv-5306, 2015 WL 6738880, at *3 (Nov. 4, 2015) (quoting *U.S. Underwriters Ins. Co. v. Zabar,* No. 97–cv–1738, 1999 WL 441472, at *2 (E.D.N.Y. May 28, 1999)). "[W]here the terms of an insurance contract unambiguously bar a claim of coverage, including defense or indemnification, that plain meaning will control, making summary judgment appropriate." *Netherlands Ins. Co. v. U.S. Underwriters Ins. Co.*, No. 14-cv-3568, 2015 WL 9295745, at *3 (S.D.N.Y. Dec. 17, 2015)(citing *Green Harbour Homeowners' Ass'n, Inc. v. Chicago Title Ins. Co.*, 74 A.D.3d 1655, 1658 (3d Dep't 2010)("Where, as here, an

11

insurance policy's unambiguous terms demonstrate that the policy does not cover the claimed loss, summary judgment is appropriate.").

B. *The Instant Case*

The parties' dispute regarding whether Villalba signed the Subcontractor Agreement before or after the Accident does not preclude the granting of summary judgment in ACIC's favor because the undisputed facts establish that at the time of the Accident, Villalba was an "employee" as that term is unambiguously defined in the Policy. The Court finds, as ACIC contends, that the Exclusion, a provision of its insurance contract with DTM, "utilizes a broad definition of 'employee' and 'contractor' such that the mere fact that Villalba was performing work in connection with the [P]roject (regardless of who actually hired him or whether he was a 'subcontractor' as that term may be used outside the context of the Policy) is sufficient to trigger the application of the [Exclusion]." (Reply at 2; *see also* Exclusion **e**.(i)(b) (stating insurance coverage does not apply to, *inter alia*, "'bodily injury' to any 'employee' of any insured arising out of or in the course of [p]erforming duties related to the conduct of any insured's business").) As noted, *supra*, the Exclusion clearly and broadly defines the term "employee":

> "Employee" shall include, *but is not limited to*, any person or persons hired, loaned, leased, contracted, or volunteering *for the purpose of providing services to or on behalf of any insured*, whether or not paid for such services and whether or not an independent contractor.

(Exclusion (emphasis added).) The Exclusion further clearly and unmistakably makes plain that the term "contractor" is broadly defined since it includes, without limitations, "any independent contractor or subcontractor of any insured . . . ." (*Id*.)

There is no dispute in the instant case that, "in the course of his work" at the Project, Villalba was injured in the Accident. (*See* Rule 56.1 Stmt., ¶¶4-5; V-Counter 56.1, ¶¶4-5; B-

12

Counter 56.1, ¶¶4-5.) The Court finds that performing an action in the course of one's work falls squarely within the plain and ordinary meaning of the phrase "for the purpose of providing services" as that phrase is utilized in the Exclusion's "employee" definition; to find otherwise would not be a reasonable interpretation of that phrase. Moreover, by its plain language, the Exclusion's "employee" definition makes clear that one's status or designation, *i.e.*, "whether or not an independent contractor", does not preclude inclusion within its definition, *to wit*:

> As used in this endorsement, "contractor" shall include, *but is not limited to*, any independent contractor or subcontractor *of any insured*, any general contractor, any developer, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, *and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein*.

(Exclusion (emphasis added).) Thus, as ACIC argues, "it is not necessary to pinpoint who actually hired Villalba, or whether he fits into the commonly used definitions of 'subcontractor' or 'independent contractor' . . . as long as it is established that he was performing work in connection with the [P]roject." (Reply at 2.) Upon the record presented, there is no dispute regarding that fact. (*See* B-Rule 56.1 Counter, ¶¶4-5; V-Rule 56.1 Counter, ¶¶4-5; Villalba Aff. (ECF No. 45-1), ¶¶2, 3 (averring: to being "hired by Darren Moore to work as a carpenter on the construction of a home at the jobsite," *i.e.*, the Project; and, that the first day of his work for Darren was February 26, 2016, the day of his Accident at the Project), *attached as* Ex. A to Coscia Decl. (ECF No. 45).) Therefore, there is no disputed issue presented which requires a jury's decision. Rather, the plain meaning of the Exclusion controls, with the terms of the Policy unambiguously barring the claims of coverage, including defense or indemnification, thereby making summary judgment appropriate. *See Netherlands Ins.*, 2015 WL 9295745, at *3; *Green*

*Harbour Homeowners' Ass'n*, 74 A.D.3d 1655, 1658 ("Where, as here, an insurance policy's unambiguous terms demonstrate that the policy does not cover the claimed loss, summary judgment is appropriate.").

\* \* \*

The Court has considered the Brady Defendants' and Villalba's remaining arguments and finds them to be without merit.

IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that:

*A.*  having determined that no rational jury could find in favor of the Brady Defendants or Villalba, the Plaintiff's Summary Judgment Motion is GRANTED;

*B.*  Plaintiff does not owe coverage, or duty to defend or indemnify to DTM or any other person or entity under the Policy or any policy issued on behalf of Plaintiff, for any claim arising out of Villalba's Accident, including, but not limited to, those claims asserted in the State Action;

*C.*  the Clerk of Court is directed to enter judgment in favor of Plaintiff and, thereafter, close this case; and

D.  the January 14, 2020 Status Conference is marked off the Court's calendar.

SO ORDERED this 8th day of January 2020 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge